UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CURTIS MITCHELL,<br>    Petitioner | )<br>)<br>) | |
| v. | )<br>) | No.   04-10539-RGS |
| SUPERINTENDENT<br>    TIMOTHY HALL,<br>    Respondent | )<br>)<br>)<br>) | |

PETITIONER'S OBJECTIONS TO
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
TO DENY PETITION FOR WRIT OF HABEAS CORPUS

In accordance with Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, Curtis Mitchell states the following objections to the magistrate judge's report and recommendation:

1.  The petitioner objects to the magistrate judge's holding that the Massachusetts Supreme Judicial Court's decision was not contrary to or an unreasonable application of any clearly established Supreme Court precedent. (M.J. 17-19).[1]  The magistrate judge bases this holding on the lack of any Supreme Court case holding

---

[1] The magistrate judge's recommendations will be cited as (M.J. ), the petitioner's memorandum in support of his petition will be cited as (P.M. ), the Government's Supplemental answer will be cited as (S.A. ), and the trial transcript will be cited as (Tr. ).

> that - as it was held here - a trial counsel renders ineffective assistance of counsel within the meaning of the Sixth Amendment where that lawyer has a firm factual basis (footnote omitted) for concluding that his or her client will testify falsely as to a material fact at trial, and, on account of that, the lawyer declines to participate in the direct examination of the client during such testimony and declines to refer to that testimony during closing argument.

However, the petitioner did not argue the existence of such precedent. Instead, he argued that there was Supreme Court precedent clearly establishing his right to the effective assistance of counsel at all critical stages of his trial, and that there was nothing in his case that justified the denial of that clearly established right. (P.M. 19-20).

Of course, the quoted portion of the judge's report may be as much a criticism of present counsel's framing of the issue as it is a ruling of law. In a footnote, the judge states that, "[t]he suggestion that trial counsel merely suspected that he (the petitioner) would commit perjury is, at once, as wrong as it is misleading." (M.J. 17 n.6). Yet the characterization of trial counsel's state of mind as one of mere suspicion that Mitchell intended to perjure himself was trial counsel's own characterization, according to the trial record.

Case 1:04-cv-10539-RGS     Document 16     Filed 11/17/2004     Page 3 of 11

3

There is therefore nothing in the petitioner's characterization that can fairly be construed as an attempt to mislead. When trial counsel first addressed the matter to the trial judge, he referred to having "certain concerns," and "suspicions," and feeling that "there may be a problem." (Tr. VI/6). Moreover, even though the Massachusetts court concluded that trial counsel actually had a firm factual basis for what he initially characterized as suspicion, it is part of the petitioner's argument that that this conclusion constitutes an unreasonable determination of fact.  (P.M. 23-26).

2.  The petitioner objects to the magistrate judge's holding that petitioner has failed to demonstrate by clear and convincing evidence that the state court's findings of fact are incorrect. Specifically, the petitioner argued in his memorandum that trial counsel's level of certainty that his client intended to perjure himself was clearly less than what the Massachusetts Court's own definition of "firm factual basis" called for. (P.M. 23).  According to that definition,

> [c]onjecture or speculation that the defendant intends to testify falsely are not enough. Inconsistencies in the evidence or

>in the defendant's version of events are also not enough to trigger the rule, even though the inconsistencies, considered in light of the Commonwealth's proof, raise concerns in counsel's mind that the defendant is equivocating and is not an honest person. Similarly, the existence of strong physical and forensic evidence implicating the defendant would not be sufficient.

*Commonwealth* v. *Mitchell*, 438 Mass. 535, 552, 781 N.E. 2d. 1237, 1251 (2003).

If equivocation by a defendant, and even the existence of strong physical and forensic evidence, do not justify counsel in withdrawing assistance from his client, then the circumstances here, as described by trial counsel himself, do not meet the standard set by the Massachusetts court. According to trial counsel's affidavit, his belief that his client would perjure himself was based only on the client's equivocating regarding his innocence and counsel's subjective view of the strength of the prosecution's evidence. (S.A. Document 1, Appendix 63-65).[2] Plainly, the SJC's conclusion that trial counsel had a "firm basis in objective fact" for his belief contradicted the court's own definition of the phase. If a defendant's

---

[2] No additional bases for this belief have been suggested either by the government or the courts who have to date considered the issue.

equivocations are not sufficient, and strong forensic evidence (such as DNA evidence, presumably), are not sufficient to justify trial counsel's refusal to assist the client, then the information available to trial counsel here did not justify counsel's actions under the Massachusetts standard announced in this case.

This internal contradiction in *Mitchell* leaves Massachusetts practitioners with little guidance as to when they must decline to present a client's testimony, or argue it.  The example given in the *Mitchell* case would lead Massachusetts defense counsel to believe that they must not assist a client in presenting his testimony if the client has equivocated regarding his innocence and the government's evidence, in counsel's subjective view, appears strong.

As stated in his memorandum, the firmly established Supreme Court precedent on which the petitioner relies is the line of Supreme Court cases that establishes the right to counsel at all critical stages of trial.  *Gideon* v. *Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Powell* v. *Alabama*, 287 U.S. 45, 57, 53 S.Ct. 55, 59--60, 77 L.Ed. 158 (1932); *Michigan* v. *Harvey*, 494 U.S. 344, 358 n.4, 110

S.Ct. 1176, 108 L.Ed.2d 293 (1990). See also petitioner's memorandum at 19. Although the petitioner has not argued, and does not argue, that *Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986) provides him with firmly established Supreme Court precedent in support of his argument, nevertheless, the Court did give some indication, particularly in the concurring opinion of Justice Blackmun, of its recognition of the importance of the issue to defendants and their advocates. Justice Blackmun wrote that, "Except in the rarest of cases, attorneys who adopt 'the role of the judge or jury to determine the facts,' pose a danger of depriving their clients of the zealous and loyal advocacy required by the Sixth Amendment." *Id.* at 189 (internal citation omitted).

Given this recognition of the significance of the issue, it appears that, if called upon to define the applicable standard, the Court will side with those courts that have determined that counsel's level of certainty that the client will perjure himself must be very high before counsel may withdraw assistance. See, e.g., *United States v. Long*, 857 F.2d 436, 447 (8th Cir, 1988) (requiring "a clear expression of intent to

commit perjury" before counsel can reveal client confidences"); *United States ex rel Wilcox v. Johnson*, 555 F.2d 115, 122 (3rd Cir. 1977) (stating that under "firm factual basis" standard "attorney may not volunteer a mere unsubstantiated opinion that his client's protestations of innocence are perjured"); *Doe v. Federal Grievance Committee*, 847 F.2d 57, 62-63 (2d Cir. 1988) (stating that "firm factual basis" standard is satisfied when attorney has "actual knowledge" based on client's acknowledgement "that he has perpetrated a fraud upon a tribunal"); *United States v. Del Carpio-Cotrina*, 733 F.Supp. 95, 99 (S.D.Fla. 1990) (stating that "actual knowledge standard is necessary to prevent unnecessary disclosure of client confidences and to protect the fiduciary nature of the attorney-client relationship"); *Shockley v. State*, 565 A. 2d 1373, 1379 (Del. 1989) (requiring knowledge beyond a reasonable doubt); *Commonwealth v. Alderman*, 437 A.2d 36, 39 (Pa. Super. Ct. 1981) (same).

3. The petitioner objects to the magistrate judge's holding that he is not entitled to relief with out a showing of prejudice in accordance with *United States v. Cronic*, 466 U.S. 648, 658-659 (1984), and had not

Case 1:04-cv-10539-RGS  Document 16  Filed 11/17/2004  Page 8 of 11

8

demonstrated prejudice from his counsel's actions as is required for relief under *Strickland* v. *Washington*, 466 U.S. 668, 687 (1984).

Mitchell was deprived of counsel during his own direct examination, which is recognized as a critical stage of the trial. See *Ferguson* v. *Georgia,* 365 U.S. 570, 596, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961). Since for the reasons already stated, the denial of the right to counsel was unjustified, the petitioner is entitled to relief without demonstrating prejudice in accordance with *Cronic*.

However, the petitioner has demonstrated that he was prejudiced by his counsel's actions. As he stated in his memorandum, it is unlikely that the entire jury would have been so unsophisticated that they saw nothing amiss in the petitioner's testifying in the narrative form. (P.M. 29-30). And the prejudice arising from defense counsel's actions during closing was even more pronounced. Not only did counsel decline to argue the petitioner's testimony, he argued in a way that contradicted that testimony. (P.M. 30).

4. The petitioner objects to the magistrates ruling or observation that the circumstances here are more compelling than those in *Nix* v. *Whiteside,* 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986) because in this case, unlike in

*Whiteside*, "petitioner was permitted to spread his perjured observations upon the record before the jury." This comment by the judge begs the critical questions: did the defendant perjure himself, and was this for his counsel to decide? It is fundamental to the defendant's claims that it was for the jury to decide who was committing perjury, and that defense counsel, after setting himself up as the arbiter of truth, prejudiced the jury by obviously abandoning the defendant during some of the more important stages of his trial. Moreover, all of this occurred in circumstances where the evidence was not overwhelming, where there was no physical evidence connecting the defendant to the crime, and where there were credible alternative suspects, one of whom, Julius Adams, was an important witness against the defendant. (P.M. 4-6).

It should also be noted that even if it is assumed that there were fundamental differences in the defendant's statements to his counsel at trial as compared to his statements early in the case, the defendant was not the only witness at his trial of whom this could be said. At least two important witnesses for the prosecution gave testimony at trial that differed drastically from earlier statements. Alvin Patterson, the only witness who reported seeing the defendant at the scene of the crime, initially

told police he did not see or hear anything on the night of the murders. This fact was brought to the jury's attention by defense counsel. (Tr. II/175). Michelle Freitas told the police on two occasions that the defendant was with her on the night of the murders (Tr. 45, 48). On the day she was arrested and charged as an accessory she changed her story and said that the defendant had confessed the murders to her. (Tr. III/26). The prosecutor was not prevented from presenting the testimony of these witnesses despite the critical inconsistencies between their earlier statements and their testimony. Instead, the judge instructed the jurors at the conclusion of the case that such inconsistencies were to be considered in determining whether the witnesses were credible. (Tr. VII/13).

It is also worth noting that the defendant had a motive to admit to the homicides even if he had not committed them. It has been acknowledged that defendants sometimes make false admissions of guilt to shield an actual perpetrator. *Commonwealth v. Alderman*, 296 P.A. Super. 262, 269 (1981). Here, the testimony at trial established that the defendant was close to a principal suspect in the murders, Julius Adams. Adams himself testified that he and the defendant were "pretty close." Adams also testified that he believed that the victims were

the ones who informed on him and caused his apartment to be raided for drugs shortly before the murders. (Tr. II/117, 117).

5. Although the petitioner has not repeated all arguments he raised and cited all cases he mentioned in his original memorandum, he asks that those arguments and cases be considered in support of these objections.

>Respectfully submitted
>for the Petitioner,
>
>_____
>Leslie W. O'Brien
>P.O. Box 426
>Winchester, MA 01890
>(781) 756-0111

CERTIFICATE OF SERVICE

I, Leslie W. O'Brien, counsel for the petitioner, hereby certify under the penalties of perjury that I have served Assistant Attorney General Susanne G. Reardon with a copy of the foregoing objections this 15th day of November, 2004, by first class mail.

>_____
>Leslie W. O'Brien
>Post Office Box 426
>Winchester, MA 01890
>781-756-0111
>BBO#542413