was an affidavit by trial counsel.   The affidavit includes

the following statements:

> 1.   When I first met Curtis Mitchell, he told me
> he did not kill the victims in this case.
>
> 2.   Later on in the course of my representation,
> he told me that he did. My subjective belief was
> that this inculpatory story was true. I had no
> additional inculpatory information other than
> that provided by the Commonwealth in discovery
> and by the witnesses at trial.
>
> . . .
>
> 3.   . . . [When Mitchell decided to testify,] he
> did not tell me that he was going to commit
> perjury, or that he was going to lie. I attempted
> to dissuade him from offering testimony I
> believed would be perjurious.
>
> . . .
>
> 7.   I believed [Mitchell's testimony] was
> perjurious because it contradicted his earlier
> version of events and was contrary to the
> evidence provided to me in discovery and
> presented during the Commonwealth's case.
>
> 8.   The defendant asked me if he could argue his
> case in addition to my [closing] argument. I told
> him that the judge would not allow it and I
> thought it would hurt rather than help him. . . .

The trial judge denied the motion for a new trial,

holding that belief beyond a reasonable doubt that a

criminal defendant intends to commit perjury is too high a

standard to impose.   Instead, the court held, trial counsel

may invoke the ethical rule that prevents him from

knowingly eliciting perjury without infringing on a

defendant's constitutional rights whenever counsel has a "firm factual basis" for believing that the client intends to perjure himself.  The trial judge concluded that trial counsel had such a basis for believing that Mitchell would commit perjury. Memorandum of Decision 33-34.

The Massachusetts Supreme Judicial Court (SJC) affirmed the denial of the motion for a new trial in *Commonwealth* v. *Mitchell*, 438 Mass. 535, 781 N.E.2d 1237 (2003).  The SJC noted that the issue raised here "has constitutional implications by reason of its potential to deprive a defendant of his right to effective assistance of counsel, and his rights to due process and a fair trial, which include the right to testify in his own defense." *Id.* at 544.  After discussing the various standards that different courts have applied in determining what level of knowledge an attorney must have before concluding that the client intends to perjure himself, the SJC held that the trial judge was correct in applying the "firm factual basis" standard.  The court further held that the judge's finding that trial counsel had such a basis was supported by the record.  *Id.* at 543-546.

## SUMMARY OF ARGUMENT

Under clearly established Federal law, as determined by the Supreme Court of the United States, Mitchell had the

right at trial to the effective assistance of counsel and to due process of law. The precedent establishing these rights applied in the present case, and nothing in *Nix* v. *Whiteside,* 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986), where the Court discussed the presumably rare circumstance where a criminal defendant has announced to his counsel his intent to perjure himself, prevented that precedent from applying. Therefore, the SJC's decision involved an unreasonable application of clearly established Supreme Court precedent.

Although the Massachusetts court rejected Mitchell's argument that counsel must know beyond a reasonable doubt that his client intents to commit perjury before withdrawal of counsel's assistance can be justified, the court nevertheless held that counsel must have "a firm basis in objective fact." After settling on this ostensibly stringent standard, the court found that the record supported the trial judge's finding of a firm factual basis on the part of Mitchell's counsel. This factual finding is unreasonable based on the record in this case.

Under the Antiterrorism and Effective Death Penalty Act, when the result reached by a state court "involve[s] an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the

United States," or when the result is "based on an
unreasonable determination of the facts," habeas corpus
relief is appropriate. 28 U.S.C. 2254(d)(1). Both
circumstances are present in this case.

ARGUMENT

I.    AEDPA Standard.

Habeas corpus relief is appropriate under the
Antiterrorism and Effective Death Penalty Act (AEDPA) where
the result reached by the state court "(1) resulted in a
decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law as
determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the
State court proceeding." 28 U.S.C. 2254(d)(1). Under the
"unreasonable application" standard, a federal court may
grant the writ if the state court "identifies the correct
governing legal principle from [the Supreme] Court's
decisions but unreasonably applies that principle to the
facts of the prisoner's case." *Williams v. Taylor,* 529
U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).
Relief is also appropriate if the state court's ruling was
based on "an unreasonable determination of the facts in
light of the evidence presented at the State court

proceeding." 28 U.S.C. 2254(d)(1)-(2). Here, relief is appropriate both under the "unreasonable application" and the "unreasonable determination of the facts" clauses of the AEDPA.

## II. The unreasonable application of Supreme Court precedent.

In regard to the "unreasonable application" standard, although the SJC did not discuss Supreme Court precedent,[4] the court explicitly recognized the governing legal principle that all criminal defendants are entitled to the effective assistance of counsel. In discussing what level of certainty that the defendant intends to commit perjury counsel must have before the right to counsel is overridden, the SJC noted that "the problem has constitutional dimensions by reason of its potential to deprive a defendant of his right to effective assistance of counsel, and his rights to due process and a fair trial, which include the right to testify in his own defense." *Commonwealth* v. *Mitchell*, 438 Mass. at 544, 781 N.E.2d at 1246.

---

[4]     The SJC did include a footnote stating that the standard the court applies in capital cases relating to ineffectiveness of counsel is more favorable to defendants than the Federal constitutional standard as stated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S.Ct 2052, 80 L.Ed.2d 674 (1984).

It is beyond dispute that the Sixth Amendment right to
the effective assistance of counsel is firmly established
by Supreme Court precedent. *Gideon* v. *Wainwright*, 372 U.S.
335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Powell* v. *Alabama*,
287 U.S. 45, 57, 53 S.Ct. 55, 59--60, 77 L.Ed. 158 (1932).
It is equally clearly established that the right to
effective assistance applies at all critical stages of
trial. *Michigan* v. *Harvey*, 494 U.S. 344, 358 n.4, 110
S.Ct. 1176, 108 L.Ed.2d 293 (1990), and that the
defendant's direct examination and closing argument are
such critical stages. *Herring* v. *New York,* 422 U.S. 853,
865, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975) (trial judge's
order denying counsel the opportunity to make a summation
at close of bench trial denied defendant assistance of
counsel); *Brooks v. Tennessee,* 406 U.S. 605, 612-613, 92
S.Ct. 1891, 32 L.Ed.2d 358 (1972) (law requiring defendant
to testify first at trial or not at all deprived accused of
"the 'guiding hand of counsel' in the timing of this
critical element of his defense," *i.e.,* when and whether to
take the stand); *Ferguson v. Georgia,* 365 U.S. 570, 596, 81
S.Ct. 756, 5 L.Ed.2d 783 (1961) (statute retaining common-
law incompetency rule for criminal defendants, which denied
the accused the right to have his counsel question him to

elicit his statements before the jury, violated the Fourteenth Amendment).

Both the trial judge and the SJC cited the Supreme Court's decision in *Nix* v. *Whiteside,* 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986), in support of their decisions in this case, without any in depth analysis of that decision. *Whiteside* is the one Supreme Court decision in which the Court discusses what trial counsel's response should be upon learning that a client intends to commit perjury. The pertinent facts in *Whiteside* are as follows.

Whiteside was charged in Iowa with one count of murder. The defense at trial was to be self-defense. Whiteside consistently told trial counsel that he had not actually seen the victim with a gun, but that he believed that the victim was reaching for a gun when he shot him. Trial counsel learned through his investigation that none of the eye witnesses had seen the victim with a gun at the time of the shooting, and police responding to the scene found no gun in the victim's possession. A week before the trial, however, Whiteside informed his counsel that he felt he must testify that he saw the victim holding something metallic on the reasoning that, "If I don't

say I saw a gun, I'm dead." Trial counsel threatened
to withdraw from the case if Whiteside insisted on
perjuring himself. Whiteside testified at trial, but
did not claim to have seen a gun.

Whiteside was convicted of second-degree murder,
and his conviction was confirmed on appeal. His
petition for a writ of habeas corpus was later denied
by the federal district court, but the Eighth Circuit
reversed, holding that trial counsel's threat to
breach the client's confidence fell below the standard
of effective assistance of counsel. The Supreme Court
then overruled the Eighth Circuit, holding that where
the client "announces" his intent to commit perjury,
actions taken by counsel to prevent that perjury do
not violate the right to effective assistance. The
Court elaborated that "[a]n attorney's duty of
confidentiality, which totally covers the client's
admission of guilt, does not extend to a client's
announced plans to engage in future criminal conduct."
*Id.* at 176.

*Nix* v. *Whiteside* does not stand for the
proposition that whenever defense counsel subjectively
believes that his client intends to give false
testimony he may abandon the client in mid-trial.

Whiteside differed from the present case in that there
the client actually announced his intention to commit
perjury, while in this case Mitchell never told his
counsel that he intended to testify to anything that
was not true.  Moreover, in *Whiteside* there was a
judicial finding that if Whiteside had testified as
proposed, his testimony would have been false.  *Id.* at
160-162.  Here, the determination that Mitchell's
testimony would be false was made by counsel alone.
In addition, although the Court did not expressly
delineate the degree of knowledge counsel must have to
invoke the rules of ethics in support of a decision to
limit counsel's assistance to the client, the
concurring opinion of Justice Blackmun indicates that
a very high degree of knowledge would be required.
Justice Blackmun wrote that, "Except in the rarest of
cases, attorneys who adopt 'the role of the judge or
jury to determine the facts,' pose a danger of
depriving their clients of the zealous and loyal
advocacy required by the Sixth Amendment." *Id.* at 189
(internal citation omitted).

In short, there is nothing in *Nix* v. *Whiteside*
that would prevent the dictates of firmly established
Supreme Court precedent from applying in this case,

and the SJC's determination that Mitchell was not
entitled to counsel at critical stages of his trial
"involved an unreasonable application of[] clearly
established Federal law as determined by the Supreme
Court of the United States,"

## III. The unreasonable determination of the facts.

Although the SJC rejected Mitchell's argument that
counsel must believe "beyond a reasonable doubt" that his
client intends to commit perjury before invoking ethical
Rule 3.3, the court held that such action may be taken only
where there is a "firm basis in objective fact" to believe
that the client intends to commit perjury.  At the same
time, the court appeared to recognize that the standard
must be sufficiently rigorous that it will prevent
application of the ethical rules from having an unjustified
impact on defendants' constitutional rights. In this
regard, the Court stated, "This standard satisfies
constitutional concerns [footnote omitted] because it
requires more than mere suspicion or conjecture on the part
of counsel, more than a belief and more information than
inconsistencies in statements by the defendant or in the
evidence. Instead, the standard mandates that a lawyer act
in good faith based on objective circumstances firmly

rooted in fact." *Commonwealth* v. *Mitchell*, 438 Mass. at
545, 781 N.E.2d at 1247.

In other words, while disagreeing with Mitchell's
argument that counsel must know beyond a reasonable doubt
that his client intends to commit perjury before refusing
the defendant assistance, the court nevertheless appeared
to hold that a high degree of certainty is required.  Yet,
despite the announcement of this standard, the SJC went on
to find that Mitchell's counsel had a firm factual basis
although the record is utterly lacking in support for this
conclusion.  Instead, the record demonstrates that trial
counsel did not act "based on objective circumstances
firmly rooted in fact."  In his colloquy with the judge,
trial counsel repeatedly used phrases connoting ambiguity
and uncertainty.  Counsel told the judge he thought, "there
may be a problem" (Tr. VI/7).  He stated that he had
"suspicions that [his client's] testimony [was] not going
to be truthful" (Tr. VI/6).  Slightly but not much stronger
was counsel's statement of his understanding that he had
certain ethical obligations "if there is something that I
reasonably believe is false" (Tr. VI/11).

Trial counsel's affidavit that accompanied the motion
for a new trial, see *infra* at 13-14, lends additional
support to the view that counsel's belief did not have a

firm factual basis.  Counsel's suspicion that his client
intended to commit perjury arose because Mitchell made
contradictory statements to him: at first, Mitchell denied
involvement in the killings; later, Mitchell took
responsibility for the killings; finally, Mitchell returned
to his initial denial of involvement.  Mitchell never told
his counsel that he intended to commit perjury.  Counsel
therefore could have had nothing more that a suspicion that
Mitchell intended to commit perjury.

Nor does the fact that counsel perceived the
prosecution's case as strong create support for a firm
factual belief.  If the fact that the client has made
contradictory statements plus counsel's perception
that the prosecution's case is strong adds up to a
firm factual belief, then circumstances where a
criminal defendant may be denied his counsel's
assistance will be common.

A determination of fact made by a state court,
including an appellate court, is presumed to be
correct for purposes of habeas corpus review. 28
U.S.C. § 2254(c)(1); *Norton* v. *Spencer*, 351 F.3d 1, 6
(2000).  However, the First Circuit has held that
where the state court's determination of the facts is
unreasonable in that it is not supported by the

record, no such deference is due. *Id.* Such is the case here.

Although the courts have used various wording to describe the degree of certainty counsel must have before withholding assistance due to a perception that the client intends to commit perjury, the courts have been nearly unanimous in determining that the degree of certainty must be high. See *United States* v. *Long*, 857 F.2d 436, 447 (8th Cir. 1988) (requiring "a clear expression of intent to commit perjury" before counsel can reveal client confidences"); *United States ex rel Wilcox* v. *Johnson*, 555 F.2d 115, 122 (3rd Cir. 1977) (stating that under "firm factual basis" standard "attorney may not volunteer a mere unsubstantiated opinion that his client's protestations of innocence are perjured"); *Doe* v. *Federal Grievance Committee*, 847 F.2d 57, 62-63 (2d Cir. 1988) (stating that "firm factual basis" standard is satisfied when attorney has "actual knowledge" based on client's acknowledgement "that he has perpetrated a fraud upon a tribunal"); *United States* v. *Del Carpio-Cotrina*, 733 F.Supp. 95, 99 (S.D.Fla. 1990) (stating that "actual knowledge standard is necessary to prevent unnecessary disclosure of client confidences and to protect the

fiduciary nature of the attorney-client

relationship"); *Shockley* v. *State*, 565 A. 2d 1373, 1379

(Del. 1989) (requiring knowledge beyond a reasonable

doubt); *Commonwealth* v. *Alderman*, 437 A.2d 36, 39 (Pa.

Super. Ct. 1981) (same).

The Massachusetts court appeared to be in sync

with those courts that have held that the standard

should be high.  Indeed, the court elaborated on the

"firm factual basis" standard as follows:

> Conjecture or speculation that the defendant
> intends to testify falsely are not enough.
> Inconsistencies in the evidence or in the
> defendant's version of events are also not
> enough to trigger the rule, even though the
> inconsistencies, considered in light of the
> Commonwealth's proof, raise concerns in
> counsel's mind that the defendant is
> equivocating and is not an honest person.
> Similarly, the existence of strong physical
> and forensic evidence implicating the
> defendant would not be sufficient.

*Commonwealth* v. *Mitchell*,  438 Mass. 551.  However,

the court's application of the standard in this case

indicates that a mere suspicion of intent to commit

perjury, coupled with a perception that the

prosecution's case is strong, is sufficient.  This

teaching of the Massachusetts court is likely to leave

many criminal defendants without representation at

critical stages in their cases.

## IV.  The *Cronic* and *Strickland* standards.

A defendant who claims that he has been denied the
right guaranteed him by the Sixth Amendment to the United
States Constitution to the effective assistance of counsel
must generally demonstrate, first, that his counsel's
performance was deficient and, second, that his counsel's
deficient performance prejudiced him to the extent that he
was deprived of a fair trial. *Strickland* v. *Washington*,
466 U.S. 668, 687 (1984). However, circumstances may arise
during trial that amount to a complete denial of the right
to counsel. If such circumstances arise at a "critical
stage" of the trial, the defendant is entitled to a
presumption that the trial was unfair, and he is not
required to show prejudice. *United States* v. *Cronic,* 466
U.S. 648, 658-659 (1984). Here, Mitchell was deprived of
counsel during his own direct examination, a critical stage
of the trial. See *Ferguson v. Georgia,* 365 U.S. 570, 596,
81 S.Ct. 756, 5 L.Ed.2d 783 (1961) (statute retaining
common-law incompetency rule for criminal defendants, which
denied the accused the right to have his counsel question
him to elicit his statements before the jury, violated
Fourteenth Amendment).

In addition, Mitchell was denied counsel at the
sidebar conferences at which the judge decided that counsel

would not be permitted to assist Mitchell. Mitchell was
absent for these conferences, and since his counsel was not
representing Mitchell's interests in telling the judge he
anticipated that his client would commit perjury, Mitchell
was utterly without representation at what can only be
viewed as a critical stage of his trial.[5] The trial judge
recognized in his rulings on the motion for a new trial
that the sidebar conferences were a critical stage of the
trial, but held that Mitchell suffered no harm stemming
from his absence at the conferences. This was an
unreasonable application of Supreme Court precedent, since
Mitchell was entitled under *Cronic* to relief without any
showing of prejudice.

However, Mitchell did in fact suffer prejudice from
the lack of counsel during his direct testimony, and would
be entitled on that claim to relief under the *Strickland's*
as well as well as *Cronic's*. "Prejudice . . . was
inevitable from the use of the narrative form, which "could
hardly have failed to convey to the jury the impression
that [Mitchell's] counsel attached little significance or

---

[5]     The SJC has recognized that a defendant has the right
to be present at sidebar conferences because they are a
critical stage of the trial. See *Commonwealth v. L'Abbe,*
421 Mass. 262, 268, 656 N.E.2d 1242 (1995), and cases
cited; *Commonwealth v. Angiulo,* 415 Mass. 502, 530, 615
N.E.2d 155 (1993).

credibility to [his] testimony." *State* v. *Robinson*, 290
N.C. 56, 67, 224 S.E.2d 174 (1976). The jurors would have
had to be unsophisticated indeed not to know that testimony
in court is taken in the form of questions and answers.
Even a juror who has been so sheltered that he or she would
not know that this was the norm would have been educated to
that fact by the time Mitchell, the last witness in the
case, testified. And even if such a juror still saw
nothing amiss in counsel's refraining from questioning
Mitchell, surely counsel's failure to argue his client's
testimony in closing would have filled out the picture.

Moreover, counsel's failure to argue Mitchell's
testimony in closing was prejudicial. The right to
effective assistance in closing argument is well-
established. "[N]o aspect of [our adversary system] could
be more important than the opportunity finally to marshal
the evidence for each side before submission of the case to
judgment." *Herring* v. *New York,* 422 U.S. 853, 862, 95
S.Ct. 2550, 45 L.Ed.2d 593 (1975). Particularly in view of
the fact that the defendant's testimony made up nearly all
of the defendant's case, his counsel's failure to argue
that evidence deprived him of a significant part of his
defense. A defendant's testimony is ordinarily an
important part of the case, and was demonstrably so here.

During their deliberations, the jurors asked to hear
Mitchell's testimony again and were given an audiotape of
the testimony for review (Tr. VIII/3-4, 10).

In addition, trial counsel's negating Mitchell's
testimony infringed on his right to testify. See *Rock v.
Arkansas*, 483 U.S. 44, 49-53 (1987) (recognizing that the
right to testify is guaranteed by the Due Process Clause of
the Fourteenth Amendment, the Compulsory Process Clause of
the Sixth Amendment, and the Fifth Amendment's privilege
against self- incrimination). It should be noted in this
regard that not only did trial counsel decline to argue
Mitchell's testimony, he actually contradicted it.
Although Mitchell testified that he had nothing to do with
the murders, his counsel argued that Mitchell may have been
an accessory before or after the fact (Tr. VI/112). By
neutralizing the defendant's testimony in this manner, the
defendant's own counsel rendered his right to testify
meaningless.

## CONCLUSION

It is the Sixth Amendment right to counsel that makes
all of the other Federal constitutional rights afforded to
a criminal defendant meaningful. For this reason, a state
court must not set aside that right as lightly as the
Massachusetts court has done in this case.

The petitioner therefore asks that his application for a writ of habeas corpus be granted.

Respectfully submitted
for the Petitioner,

Leslie W. O'Brien
P.O. Box 426
Winchester, MA 01890
(781) 756-0111

## CERTIFICATE OF SERVICE

I, Leslie W. O'Brien, counsel for the petitioner, hereby certify under the penalties of perjury that I have served Massachusetts Attorney General Thomas F. Reilly, with a copy of the petitioner's petition for habeas corpus with supporting memorandum this 12th day of March, 2004, by first class mail.

Leslie W. O'Brien
Post Office Box 426
Winchester, MA 01890
781-756-0111
BBO#542413